UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RANDALL D. TURNER,

       Plaintiff,

v.

PARKER-HANNIFIN CORPORATION,

       Defendant.
_____/

File No. 1:11-CV-300

HON. ROBERT HOLMES BELL

**O P I N I O N**

This action under the Family and Medical Leave Act ("FMLA") is before the Court on Defendant's motion for summary judgment. (Dkt. No. 23). For the reasons that follow, the motion will be denied.

**I.**

Plaintiff Randall D. Turner began working for Defendant Parker-Hannifin Corporation ("Parker-Hannifin" or the "Company") at its Hose Products Division Plant in Mason, Michigan in February 1978. Plaintiff was originally employed by Parker-Hannifin as a machinist and eventually became a shift leader. At the time of his termination on December 2, 2010, he was a Class A Operator whose responsibilities included loading 12-foot steel bars into spindles. (Pl. Ex. D, Teachout Aff. ¶ 5; Stage Dep. 63-64.) The steel bars could weigh over a hundred pounds, and the operator was required to lift, at a minimum, half

the weight of the bar.  (Teachout Aff. ¶¶ 5-6.)[1]

In October 2010, Plaintiff was loading 1 3/8 inch hex bars into the machine when the machine indexed, pinching the bar between the rack, and twisting Plaintiff's back.  (Pl. Dep. 81; Teachout Aff. ¶ 7.)  Plaintiff told his supervisor, Gene Stage, about what had happened, but neither Plaintiff nor his supervisor prepared an accident or injury report.  (Pl. Dep. 81.) Plaintiff reported a history twisting his back at work to Dr. Wellemeyer, his primary care physician, on October 15, 2010.  Dr. Wellemeyer found that Plaintiff had back strain.  (Pl. Ex. I.)

The first week of November, Plaintiff used vacation time to go hunting in Montana. (Pl. Dep. 15.)  Upon his return, Plaintiff worked one day, then went to see his doctor about his back pain.  On November 9, 2010, Dr. Graesser diagnosed a dorsal/lumbar strain.  (Pl. Ex. H.)   The following day, plaintiff was seen by Dr. Lessard, who prescribed Ultram for pain relief, and advised Plaintiff to rest, take it easy, and not to bend, twist, or lift heavy objects.  Plaintiff provided Lori LaTour, Defendant's Human Resources Manager, a note from Dr. Lessard indicating that Plaintiff "is under my care for the treatment of back pain. He is placed off work beginning: November 10, 2010, and may return to work on:  November 22, 2010."  (Pl. Dep. 83-84; Pl. Dep., Ex. 16.)  Plaintiff requested, and was granted, FMLA leave from November 10 to November 19.  (LaTour Dep. 53.)

---

[1]Although Defendant has presented some conflicting evidence, for purposes of this motion the Court views the facts in the light most favorable to Plaintiff, the non-moving party.

Plaintiff has diabetes. In 2010 he used intermittent FMLA leave for medical appointments or for problems related to his diabetes. (Pl. Ex. G; LaTour Dep. 70.) It appeared to the Company that Plaintiff's FMLA leave requests tended to straddle weekends and holidays. (Balistreri Dep. 48.) The Company also suspected that Plaintiff had misused his FMLA leave in the past. (Balistreri Dep. 28.) LaTour, Plant Manager Jared Balistreri, and Value Stream Manager Dave Perry had a telephone meeting regarding what to do in the future regarding Plaintiff's FMLA leave. (LaTour Dep. 86.) A decision was made to watch Plaintiff's use of FMLA days going forward to see if there was a pattern of taking FMLA leave on days abutting weekends. (LaTour Dep. 86.) During a subsequent telephone conversation between Human Resources Manager LaTour, Manufacturing Manager Todd Chambers, Plant Manager Balistreri, Operations Manager Ty Doyle, and Manufacturing Manager Brian Cunningham, a decision was made to hire a private investigator. (LaTour Dep. 101; Balistreri Dep. 24.)

On November 18, 2010, LaTour hired the Shadow Detective Agency to conduct an investigation into what activities Plaintiff was engaging in while on FMLA leave. (La Tour Dep. 156; Pl. Ex. N, Shadow Rpt. 1.)

Prior to returning to work on November 22, Plaintiff informed his doctor that his back was still sore. His doctor agreed to write a note for the following week that Plaintiff could pick up on Monday. (Pl. Dep. 14.) Plaintiff began work on Monday, November 22, at 7:00 a.m., but at 9:30 a.m. he told his supervisor, Rodney Lane, that although he tried to work, his

back hurt and he could not do it. (Pl. Dep. 104.) According to Plaintiff's co-workers, Plaintiff had been given the largest machine to run, and he was obviously in serious pain. (Pl. Ex. D, Teachout Aff. ¶ 13; Pl. Ex. E, Kintigh Aff. ¶ 12.) Plaintiff left work, and returned with a note dated November 21, from Dr. Lessard, indicating that he was placed off work from November 22 until November 29. (Pl. Dep. 13; La Tour Dep. 54; Pl. Dep. Ex. 17.)

The Shadow Detective Agency investigated Plaintiff over a six-day period, from November 19 through November 24. The Agency reported that on November 20, Plaintiff was observed hunting for approximately ten hours, and that on November 22, within one hour of informing his employer that he was in severe pain and could not perform his work duties, he was observed entering the wood line to go hunting. (Shadow Rpt. 1.) No activity was observed on the other four days.

After receiving the report from the Shadow Detective Agency, there was a second meeting of the management group, at which time the decision was made to terminate Plaintiff. (Balistreri Dep. 77.) Parker-Hannifin's Code of Conduct provides that each employee is responsible for "Embracing the values of acting honestly and with integrity." (Def. Ex. 2, p. 2) "Anyone who violates the Code of Conduct, in spirit or letter, is subject to disciplinary action up to and including termination." (*Id.*) The group believed that Plaintiff abused the policy by going hunting after claiming that he was in such severe pain that he could not work. (Balistreri Dep. 77-78; LaTour Dep. 104.) Latour, Balistreri, Doyle, Chambers, Brian Cunningham, Rodney Lane, and Deborah Scott arrived at a group decision to terminate Plaintiff. (LaTour Dep. 106.)

When Plaintiff returned to work on December 2, 2010, he was immediately discharged for fraudulently claiming FMLA leave and for lying to the Company about not going to go hunting. (LaTour 104-05.)

Plaintiff filed this action under the FMLA, alleging that Defendant interfered with his entitlement to FMLA leave and retaliated against him for taking leave to which he was entitled.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendant carries its burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence

5

in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

Under the FMLA, an eligible employee is entitled to a total of 12 workweeks of leave during any 12-month period for certain kinds of medical leave, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(1)(D). There is no dispute that at least some of the leave Plaintiff took qualified as FMLA leave.[2]

The Act makes it unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," or "to discharge or otherwise discriminate against any individual for opposing any practice made

---

[2] An employee is entitled to FMLA leave if he has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(1)(D). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The applicable federal regulations define "continuing treatment" to include "[a] period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: "(1) Treatment two or more times, within 30 days of the first day of incapacity . . . ." 29 C.F.R. § 825.115(a). "Incapacity" means "inability to work . . . or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b). "Treatment" includes "examinations to determine if a serious health condition exists." 29 C.F.R. § 825.113(c). "A regimen of continuing treatment" includes "a course of prescription medication." *Id.*

unlawful by this subchapter." 29 U.S.C. § 2615(a).[3] The Act affords an employee a private right of action against the employer for damages, interest, and other equitable relief. 29 U.S.C. § 2617(a).

The Sixth Circuit recognizes two distinct theories for recovery under the FMLA:

> (1) the "entitlement or "interference" theory arising from 29 U.S.C. § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2).

*Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 555 -556 (6th Cir. 2006) (quoting *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004)). Defendant moves for summary judgment on Plaintiff's requests for recovery under both theories.

**A. Interference**

Defendant contends that Plaintiff's interference claim fails as a matter of law because Plaintiff was not denied FMLA leave.

> In order to establish an FMLA interference claim, a plaintiff must demonstrate that: (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the

---

[3]The Act provides in pertinent part:

(a) Interference with rights
(1) Exercise of rights
It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
(2) Discrimination
It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a).

>FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Killian*, 454 F.3d at 556 (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)). The fifth element may be rephrased to provide that the employer has somehow used the FMLA leave against the employee in an unlawful manner, as provided in either the FMLA statute or regulations. *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007).[4]

Defendant does not question Plaintiff's satisfaction of the first four elements of the prima facie FMLA interference claim. Defendant contends, however, that Plaintiff cannot make out the fifth element of the prima facie claim because The Company granted all of Plaintiff's requests for FMLA leave. The Company granted Plaintiff FMLA leave from November 10 through November 22, from November 22 through November 29, and on several other occasions during 2010. Defendant contends that because Plaintiff received all the leave he requested, Plaintiff cannot show that Parker-Hannifin interfered with his attempt to exercise any right provided under the FMLA.

---

[4]As noted in *Wysong*,

>Under 29 C.F.R. § 825.220(c) "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." We have earlier held that this negative-factor analysis is applicable in analyzing an interference claim. If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled.

503 F.3d at 447 (citations omitted).

Although Plaintiff received all of the FMLA leave he requested, Defendant's failure to restore him to his position at the end of his FMLA leave is itself sufficient to constitute interference. The FMLA provides that any eligible employee who takes FMLA leave "shall be entitled . . . to be restored" to the employee's former position or to an equivalent position. 29 U.S.C. § 2614(a). "The FMLA not only grants the statutory right for an eligible employee to take up to twelve weeks of leave, but also creates the concomitant right for an employee who has taken leave 'to be restored by the employer to the position of employment held by the employee when the leave commenced.'" *Hoge*, 384 F.3d at 244 (quoting 29 U.S.C. § 2614(a)(1)(A)). "If an employer denies an employee the right to return to work from FMLA leave, such an act constitutes interference, regardless of whether the employer intended to interfere with the employee's FMLA rights." *Mitchell v. County of Wayne*, 337 F. App'x 526, 532 (6th Cir. 2009) (citing *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)). Accordingly, Plaintiff's claim that he was terminated for taking FMLA leave is cognizable under the interference theory. *See Wysong*, 503 F.3d at 446-47; *Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 283 F.3d 818, 825 (6th Cir.2002) (holding that the prohibition against interfering, restraining, or denying the exercise of any FMLA right includes retaliatory discharge for taking leave).

Even if Plaintiff has a claim for interference, Defendant contends that it is entitled to summary judgment on the interference claim because the undisputed evidence compels a finding that Plaintiff was discharged because he was dishonest and abused FMLA leave, and not because he took legitimate FMLA leave.

The right to reinstatement under the FMLA is not absolute. *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003). "An employer need not reinstate an employee who would have lost his job even if he had not taken FMLA leave." *Id.* Both the FMLA statute and the Department of Labor regulations establish that "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar*, 443 F.3d at 508.[5] Once an employee has shown that the employer interfered with his right to restoration of his employment following FMLA leave, the burden shifts to the employer to prove that the employee would have been dismissed regardless of the employee's taking of FMLA leave. *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005) (citing 29 C.F.R. § 825.216(a)). As Defendant correctly notes, "nothing in the FMLA prohibits an employer from investigating allegations of dishonesty or from terminating an employee who violates company policies governing dishonesty. The FMLA does not shield an employee from termination simply because the alleged misconduct concerns use of FMLA leave." *Kitts v. Gen. Tel. N., Inc.*, No. 2:04-CV-173, 2005 WL

---

[5]The governing regulation provides:

> An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.

29 C.F.R. § 825.216(a).

2277438, at *11 (S.D. Ohio. Sept. 19, 2005). However, to succeed on its defense, the employer must show that "the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). To avoid liability, the employer must show that it refused to reinstate the employee for a reason "wholly unrelated to the FMLA leave." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001). "If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Wysong*, 503 F.3d at 447; *see also Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 726 (6th Cir. 2003) ("[A] termination based only in part on an absence covered by the FMLA, even in combination with other absences, may still violate the FMLA."). A jury is entitled to find in the employee's favor if he presents sufficient evidence to establish that he was denied his substantive rights under the FMLA "for a reason connected with his FMLA leave," and such a reason need not be retaliation. *Arban*, 345 F.3d at 402 (quoting *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002)).

  Plaintiff contends, in response to Defendant's motion for summary judgment, that that he was not dishonest and that did not abuse FMLA leave. Plaintiff has presented evidence that he did in fact go home on November 22, and that he did not go hunting that day. (Monica Turner Aff. ¶¶ 11-20; Brad Roe Aff. ¶ 14.)

  Defendant has presented evidence that it terminated Plaintiff because he was dishonest and abused FMLA leave, as evidenced by the report from the Shadow Detective Agency.

Defendant contends that regardless of what actually occurred, based on the report from Shadow Detective Agency, it honestly and reasonably believed that Plaintiff violated its Code of Conduct provision regarding honesty and integrity, and terminated Plaintiff for this violation, rather than for Plaintiff's request for FMLA leave. It has been widely held that an employer who discharges an employee based upon a reasonable and honest belief that the employee has been dishonest would not be in violation of the FMLA, even if its conclusion is mistaken. *See*, *e.g.*, *Weimer v. Honda of Am. Mfg., Inc.*, 356 F. App'x 812, 818-19 (6th Cir. 2009) (approving jury instruction on honestly held belief defense to FMLA interference claim); *Medley v. Polk Co.*, 260 F.3d 1202, 1207 (10th Cir. 2001); *Allen v. City of Sturgis*, 559 F. Supp. 2d 837 (W.D. Mich. 2008) (Maloney, J.) (applying pretext analysis to interference claim). As noted in *Stonum v. U.S. Airways, Inc.*, 83 F. Supp. 2d 894 (S.D. Ohio 1999):

> The critical issue, however, is not whether the investigator's report was accurate, or even whether Stonum actually abused her FMLA leave. Rather, the key issue is whether the Defendant terminated Stonum based upon a good faith, reasonable belief that she had abused that leave.

*Id*. at 903. *See also Edgar*, 443 F.3d at 507-08 ("[T]he FMLA is not a strict-liability statute."). "In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

12

> [I]n order for an employer's proffered non-discriminatory basis for its employment action to be considered honestly held, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made. If the employer is unable to produce such evidence to support its employment action, then the "honest belief" rule does not apply.

*Id.* (applying the honest belief rule in the ADA context).

This Court cannot find, as a matter of law, that it was reasonable for Defendant to terminate Plaintiff solely in reliance on the Shadow Detective Agency report that Plaintiff went hunting. Plaintiff has presented evidence that it was not typical for the Company to use surveillance on employees who take FMLA leave. (LaTour Dep. 102.) The Company's lack of experience in this area appears to be reflected in the quality of the Report it requested and received. The Company hired the detective agency because it suspected that Plaintiff was hunting. (LaTour Dep. 101.) The only particularized fact found in the Report is that Plaintiff walked into the woods with a gun. The Report did not indicate whether Plaintiff's activities were inconsistent with the restrictions placed on him by his doctors. The Report did not indicate that Plaintiff engaged in heavy lifting, bending, or twisting, or any other activity that would be inconsistent with Plaintiff's assertion that he was unable to work. Plaintiff testified that for him, hunting meant walking a short distance into the woods carrying less than ten pounds, and sitting in a comfortable chair that was already set up in the blind. (Pl. Dep. 84-85; Pl. Ex. C, Roe Aff. ¶ 11.)

There is no evidence that the Company gave any consideration to Plaintiff's medical condition or to the restrictions placed on him by his doctors. (Balistreri Dep. 79.) There is

13

no evidence that the Company knew or even questioned whether Plaintiff was on pain medication that would be inconsistent with his operation of heavy machinery. There is also no evidence that the Company gave Plaintiff any opportunity to explain his activities.[6] The determination of whether it was reasonable for the Company to simply equate hunting with the ability to work without considering what was involved in either activity is a question of fact that must be left for a jury.

In addition to questions of fact regarding the employer's honest belief defense, the Court is also satisfied that Plaintiff has presented evidence from which a jury could conclude that Plaintiff's legitimate taking of FMLA leave was a negative factor in the Company's termination decision. For example, Plaintiff has presented evidence that his employers were focused on the amount of FMLA leave he was taking throughout 2010. In a March 31, 2010, email to Lori LaTour, Dave Perry noted:

> Not sure if you are aware or not, but Randy has recently used FMLA days last Thursday, Friday, and today. That's 3 in 5 working days and 5 total FMLA days for the year so far. Can you investigate and see what's going on. Are these all legit? I know I'm personally tired of dealing with him and his repeated FMLA days. There has to be something we can do to make it harder for him to arbitrarily take these days. Maybe he would discontinue using them if he had to burn his own vacation time first.
>
> I'm not a doctor, but we have an employee here who needs insulin shots for their sugar and they don't need any FMLA days at all.

---

[6] Although an employer has no legal obligation to speak with an employee before terminating him, *see Smith*, 155 F.3d at 805, its failure to do so is a factor that may be considered in determining the reasonableness of its termination decision.

(Pl. Ex. A.) In a June 11, 2010, email to Lori LaTour and Jared Balestreri, Perry gave his opinion that:

> We strongly pursue trying to get him removed from the facility based on his abuse of the FMLA policy and how he uses them. I think we can show through his records that he is using them for something other than their intended purposes. We have been more than patient with him, but he does not seem to want to come around.

(Pl. Ex. B.)

Defendant contends that Perry's emails are irrelevant because Plaintiff has failed to demonstrate that the emails had any influence on the decision to discharge Plaintiff months later. Although Perry was not among the group of individuals that made the decision to terminate Plaintiff, his emails were directed to members of that group, and Perry's concerns were reflected in emails from Balestreri and Chambers, who participated in the decision to terminate Plaintiff. (Pl. Ex. A.) A jury could infer that the group was influenced by Perry and that it did rely, at least in part, on Plaintiff's prior FMLA usage in terminating him. *See Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007).

A company's investigation into an employee's suspected misuse of FMLA leave is not improper. Nevertheless, these emails, together with the Company's failure to look into Plaintiff's medical requirements, viewed in the light most favorable to Plaintiff, can also raise an inference that the Company was more concerned with the number of days of FMLA leave taken than with the medical necessity for such leave. The Court is satisfied that Plaintiff has presented a genuine issue of material fact as to whether the Company used Plaintiff's FMLA-qualifying leave as a negative factor in his termination.

15

**B. Retaliation**

Defendant contends that it is entitled to judgment as a matter of law on Plaintiff's retaliation claim because Plaintiff cannot establish a causal connection between his exercise of FMLA leave and his discharge.

Plaintiff has not presented direct evidence that he was terminated because he requested FMLA leave. Accordingly, his retaliation claim is analyzed under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Edgar*, 443 F.3d at 508. In order to establish a prima facie FMLA retaliation or discrimination claim, Plaintiff must demonstrate that:

> (1) [he] was engaged in an activity protected by the FMLA; (2) the employer knew that [he] was exercising [his] rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian*, 454 F.3d at 556 (citing *Arban*, 345 F.3d at 404). The significant difference between an interference and a retaliation claim is the causal connection element, which encompasses an employer's intent; in contrast to the interference theory, under the retaliation theory, "the employer's motive is an integral part of the analysis." *Edgar*, 443 F.3d at 508. If the plaintiff can prove a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employer's action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant carries this burden, the plaintiff must show that the legitimate reasons offered by the defendant are pretextual. *Id*. at 804.

16

Defendant contends that Plaintiff cannot establish that there was a causal connection between his taking FMLA leave and his discharge. Defendant points out that Plaintiff simply asserted in his complaint, amended complaint, and deposition, that he was terminated because the Company relied on the private investigator's false report that Plaintiff was hunting on November 22nd.[7]

Defendant was on notice that Plaintiff was alleging a causal connection between his exercise of his FMLA rights and his termination. Plaintiff alleged in his complaint that Defendant "terminated Plaintiff's employment because he requested FMLA leave." (Compl. ¶ 20; Am. Compl. ¶ 20.) Plaintiff has also presented evidence to support a causal connection. Plaintiff was terminated immediately upon his return from FMLA leave. Temporal proximity alone is generally not sufficient to establish causation. *Nguyen v. City of Cleveland*, 229 F.3d 559, 565 (6th Cir. 2000). *But see Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (holding that where an adverse action occurs very close in time after employer learns of protected activity, such temporal proximity is sufficient to establish a causal connection for purposes of the prima facie case). There is no question that temporal proximity may be considered with additional evidence to support a causal connection between the protected conduct and the adverse action. *Id.* Here, causation is supported not

---

[7]Plaintiff alleges in his complaint that: "Defendant based its decision to terminate Employee on a lie – namely, that after returning to work and providing the Defendant with the second doctor's note, Plaintiff left work that day to go hunting. Instead, Plaintiff was with his wife the entire day." (Compl. ¶ 15; Am. Compl. ¶ 15.) At his deposition Plaintiff testified to his belief that the reason he was let go was that the Company relied on a lie by the detective. (Pl. Dep. 131-32.)

only by temporal proximity, but also by Defendant's unhappiness with Plaintiff's perceived over-use of FMLA leave, as reflected in the emails.

Even if Plaintiff has presented sufficient evidence of a causal connection to establish a prima facie case of retaliation, Defendant contends that it is nevertheless entitled to summary judgment because it has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff cannot show that the reason given was pretextual.

Defendant contends that Plaintiff was terminated for violating a work rule. Discharging an employee for falsifying the reasons for an absence is a legitimate non-discriminatory reason for the discharge. *See Stonum*, 83 F. Supp. 2d at 900. Because Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, the burden shifts to Plaintiff to show that the articulated reason is pretextual.

A plaintiff may establish pretext by showing that the employer's proffered reasons "(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 631 (6th Cir. 2008). The Court finds that the same questions of fact that preclude the Court from deciding the applicability of the honest belief defense as a matter of law, *see* Part III(A) above, also preclude this Court from deciding the issue of pretext. Whether Defendant terminated Plaintiff for violating a work rule or in retaliation for his use of FMLA leave is an issue of fact for trial.

For the reasons stated in this opinion, Defendant's motion for summary judgment will be denied.

An order consistent with this opinion will be entered.


Dated: April 12, 2012                                  /s/ Robert Holmes Bell
                                                       ROBERT HOLMES BELL
                                                       UNITED STATES DISTRICT JUDGE